UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| PROVEN METHODS SEMINARS, LLC, a Nevada limited liability company; and PROVEN METHODS CUSTOMER SERVICE, LLC, a Nevada limited liability company, doing business together as NATIONAL GRANTS CONFERENCES,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>AMERICAN GRANTS & AFFORDABLE HOUSING INSTITUTE, LLC, a Texas limited liability company; BEST NEWS REALTY, LLC, a Texas limited liability company; COAST-TO-COAST MARKETING, LLC, a Texas limited liability company; JOHN T. POLK; PATRICK FARAH; WILLIAM PAPPAS, KALEB FORREST; RENE GONZALEZ; MICHELLE HARMON; LEWIS CURRY; TIFFANY BARNES; SCOTT VOELKEL; STEVE WYMAN; STEVE WOLLASTON; GUS FERNANDEZ; DONALD HARKEMA; NANCY DEVAUGHN; JACK MARLANDO; DAWN LANE; and BRUCE WEST, JR.,<br><br>　　　　Defendants. | NO. CIV. S-07-01588 WBS EFB<br><br>ORDER RE: MOTION TO DISMISS |

----oo0oo----

1

        Plaintiffs Proven Methods Seminars, L.L.C. and Proven Methods Customer Service, L.L.C. (collectively "plaintiffs") brought this action alleging copyright and trademark infringement against defendants American Grants & Affordable Housing Institute ("defendants"). In response to plaintiffs' amended complaint, defendants filed several counterclaims including allegations based on civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. §§ 1961 et seq. Plaintiffs now move to dismiss defendants' RICO counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.    Factual and Procedural Background

        In March of 1998, plaintiffs created a nationwide program, National Grants Conferences, that provides information to its customers about the various government grant, loan, and subsidy programs available to buy their first home, invest in real estate, or start/expand businesses. (Sept. 17, 2007 Order 2:10-14.) Defendants, formed in May of 2007, are also involved in providing customers with information about how to obtain loans, grants, and subsidies from government agencies. (Id. at 2:24-27.) On August 3, 2007, plaintiffs filed this action based on similarities regarding the companies' seminars and services, alleging causes of action based on: 1) copyright infringement (17 U.S.C. § 101 et seq.); 2) trademark infringement (15 U.S.C. § 1114 et seq.); 3) unfair competition/false advertising (15 U.S.C. § 1125(a)(1)); 4) unfair competition/likelihood of confusion (15 U.S.C. § 1125(a)(1)); 5) intentional interference with contractual relations; 6) intentional interference with

2

prospective economic advantage; 7) conversion; 8) theft of trade secrets; 9) unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.); 10) breach of contract; and 11) conspiracy and aiding and abetting.  (First Am. Compl. ¶¶ 67-152.)

On November 5, 2007, defendants filed several counterclaims, the first two of which are premised on plaintiffs' alleged violations of RICO.  (Countercl. ¶¶ 22-33.)  The first RICO counterclaim alleges violation of 18 U.S.C. § 1962(c), which makes it unlawful for any person associated with an enterprise to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity.  The second counterclaim alleges violation of § 1962(d), which is based upon a conspiracy to violate § 1962(c).

Both of defendants' RICO counterclaims revolve around the publication of a misleading advertisement (the "Table") that they claim plaintiffs have been posting for an untold number of years.  (Countercl. ¶¶ 18-19.)  The Table is a replication of Table No. 423 from the U.S. Office of Management and Budget's 2006 Official Release.  (Id. at ¶ 18.)  However, plaintiffs' replication is skewed in that it purports to reflect the total amount of federal grants available to individuals over the last twenty-six years.  (Id. at ¶ 19.)  A comparison to the U.S. Office of Management and Budget's actual Table No. 423 demonstrates that plaintiffs have extracted the information, reformatted the table, and modified column headings and the general Table structure.  (Id.)  Thus, post-modification, the amounts listed in the Table as being available to individuals actually reflect the total available federal grant

3

1 money--including grants and funding <u>not available to individuals</u>.
2 (<u>Id.</u>)  In 2006, for example, a total of $449,277,000,000 in
3 grants was available, but only $287,634,000,000 of that amount
4 was available to individuals.  However, the amount listed as
5 "available to individuals" in plaintiffs' Table is listed as the
6 original $449,277,000,000.  Thus, defendants argue that
7 plaintiffs' modification, as represented in the Table, is a
8 fraudulent action intended to deceive potential customers into
9 believing that they have access to the entire amount.

10     Plaintiffs stress that this was simply an inadvertent
11 mistake and have subsequently changed the Table to reflect the
12 actual information as represented in the U.S. Office of
13 Management and Budget's Table No. 423.  On December 10, 2007,
14 plaintiffs filed a motion to dismiss defendants' RICO
15 counterclaims pursuant to Federal Rule of Civil Procedure
16 12(b)(6).

17 II. <u>Discussion</u>

18     On a motion to dismiss, the court must accept the
19 allegations in the complaint as true and draw all reasonable
20 inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416
21 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.</u>
22 <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322
23 (1972).  To survive a motion to dismiss, a plaintiff needs to
24 plead "only enough facts to state a claim to relief that is
25 plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct.
26 1955, 1974 (2007).  Dismissal is appropriate, however, where the
27 plaintiff fails to state a claim supportable by a cognizable
28 legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696,

4

1  699 (9th Cir. 1990); see also Conley v. Gibson, 355 U.S. 41, 47
2  (1957), abrogated on other grounds by Twombly, 127 S. Ct. at 1968
3  (complaint must "give the defendant fair notice of what the
4  plaintiff's claim is and the grounds upon which it rests").
5  "However, the court is not required to accept legal conclusions
6  cast in the form of factual allegations if those conclusions
7  cannot reasonably be drawn from the facts alleged." Clegg v.
8  Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

      A.    RICO Claim

10          In order to state a claim under RICO section 1962(c), a
11  party must allege the following: 1) conduct 2) of an enterprise
12  3) through a pattern 4) of racketeering activity. Sun Sav. &
13  Loan Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir. 1987)
14  (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).
15  In their instant motion, plaintiffs contend that defendants fail
16  to properly allege that plaintiffs engaged in a pattern or
17  practice of RICO predicate acts, constituted a cognizable RICO
18  enterprise, or managed this purported enterprise.

19        1.    Predicate Acts

20          "Racketeering activity" is defined in 18 U.S.C. §
21  1961(1)(B) as including any act "indictable" under certain
22  enumerated federal criminal statutes, including 18 U.S.C. § 1341
23  (mail fraud) and 18 U.S.C. § 1343 (wire fraud). Schreiber
24  Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393,
25  1399 (9th Cir. 1986). As a threshold matter, Federal Rule of
26  Civil Procedure 9(b)--which requires that "the circumstances
27  constituting fraud . . . shall be stated with
28  particularity"--applies to RICO fraud allegations, including mail

5

and wire fraud.  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989).  Under Rule 9(b), the alleging party must "state[] the time, place and nature of the alleged fraudulent activities."  Semegen v. Weidner, 780 F.2d 727, 735 (9th Cir. 1985)

Here, defendants have properly pled that plaintiffs committed the predicate acts of mail and wire fraud.[1]  First, defendants allege that plaintiffs knowingly and willfully committed mail fraud for the purpose of "defraud[ing] the customer into believing that there was a grossly-overstated amount of government funds available to him/her" by including the Table in an advertisement they placed in the July 26, 2007 *Times-Picayune* newspaper in New Orleans.[2]  (Countercl. ¶ 24(a).)

---

[1] The predicate acts are presented in the text of defendants' counterclaims as follows:

> a. On July 26, 2007, counterdefendants knowingly and willfully ordered the publication of false advertisements through the mail system, by way of newspapers. The advertisement was designed to defraud the customer into believing that there was a grossly-overstated amount of government funds available to him/her, in furtherance of the scheme to defraud devised by counterdefendants in violation of 18 U.S.C. § 1343 (**mail fraud**).
>
> b. Over the last several months, if not years, counterdefendants knowingly and willfully published and/or sent false promotional material over the wires, via the internet and its corporate website, that was designed to defraud the customer as to the availability of government funding available to him/her, in furtherance of the scheme to defraud devised by counterdefendants in violation of 18 U.S.C. § 1343 (**wire fraud**).

(Countercl. ¶ 24(a),(b) (emphasis added).)

[2] In addition to the facts alleged in the counterclaims, a copy of the *Times-Picayune* advertisement and a printout of the webpage containing the Table (from plaintiffs' internet website)

6

1 Next, defendants allege that plaintiffs also knowingly and
2 willfully published or sent the fraudulent Table over the wires
3 via their internet website for the same illicit purpose on
4 October 17, 2007. (Id. at ¶ 24(b).)

Because defendants' counterclaims provide an explanation as to why the Table was false and misleading, In re Glenfed, Inc. Secur, Litig., 42 F.3d 1541, 1548 (9th Cir. 1994), and specifically state the time, place, and nature of the fraudulent activities, Semegen, 780 F.2d at 735, the court finds that the predicate acts sufficiently identify the circumstances constituting mail and wire fraud under Rule 9(b). See Gottreich v. S.F. Inv. Corp., 552 F.2d 866 (9th Cir. 1977) ("[P]leading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" (quoting Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973))).

### 2. Pattern or Practice

To prevail under RICO, the alleging party must also establish a pattern or practice of activity. 18 U.S.C. § 1962(c). At a minimum, a "practice or pattern" requires that the

---

are attached to defendants' counterclaims. Thus, the court will consider indicia of particularity conveyed in the attachments in conjunction with the facts alleged in the body of the counterclaims. See Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1988) (when ruling on a motion to dismiss, the court may consider facts alleged in the complaint as well as documents attached to the complaint) and Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1214 (E.D. Cal. 2004) (a motion to dismiss a counterclaim for failure to state a claim is evaluated in the same manner as a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6)).

predicate criminal acts be "related" and "continuous." <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989).

The newspaper advertisement and the website posting are consistent, interconnected attempts aimed at recruiting new customers.  Thus, defendants sufficiently allege relatedness where both predicate acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." <u>Id.</u> at 240.  Although the same Table is at the crux of both predicate acts, this does not support dismissal. <u>See</u> <u>Sun Savs. & Loan Ass'n v. Dierdorff</u>, 825 F.2d 187, 191-94 (9th Cir.1987) (predicate acts may constitute a pattern of activity under RICO even though only a single scheme or activity was involved); <u>Ca. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc</u>., 818 F.2d 1466, 1469 (9th Cir. 1987) (same).

Further, "[c]ontinuity is demonstrated if the illegal conduct poses a threat of continued criminal activity, such as when the illegal conduct is 'a regular way of conducting [a] defendant's ongoing legitimate business.'"[3] <u>Sever v. Ala. Pulp Corp.</u>, 978 F.2d 1529, 1535 (9th Cir. 1992) (quoting <u>H.J. Inc.</u>, 492 U.S. at 243).  The United States Supreme Court cautioned that the continuity element may be satisfied in several ways because the analysis "depends on the specific facts of each case . . .

---

[3] Even though the alleged predicate acts took place within months of one another, this timing is not an issue so long as there is a threat of continuing criminal activity. <u>See</u> <u>Sun Savs.</u>, 825 F.2d at 194 (predicate acts that spanning a two month period satisfied the RICO "pattern or practice" requirement).

[and] cannot be fixed in advance with such clarity that it will always be apparent." H.J. Inc, 492 U.S. at 242-43.

Here, the Table appeared in one of plaintiffs' recent advertisements as well as on their website, and it was only removed once defendants identified its fraudulent characteristics in their counterclaims. Where an act or practice was only terminated because a lawsuit was brought, courts have held that the requisite continuity is established. See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995) (continuity element deemed present where there was nothing to suggest that the RICO defendants would have ceased activity unless RICO plaintiff had intervened as it did); Abraham v. Singh, 480 F.3d 351, 356 (5th Cir. 2007) (finding continuity of racketeering activity where "there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit").

3. RICO Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); see also United States v. Turkette, 452 U.S. 576, 583 (1981) (an enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct, proved by evidence of an ongoing organization, either formal or informal, and that the various associates function as a continuing unit).

Here, defendants' counterclaims designate National Grants Conferences as the "enterprise" and allege that it is made

9

up of the two named defendants (Proven Methods Seminars L.L.C. and Proven Methods Customer Service L.L.C.), a separate corporate entity (Worldwide Media and Communications Group), and an individual (Michael Milin).  Because their allegations demonstrate that the RICO persons/corporations are distinct from the RICO enterprise, defendants have sufficiently pled the existence of a RICO enterprise.  See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity.").

           4.    Operation or Management of the Enterprise

In order for a party to be subject to liability under RICO, one need only "participate in the operation or management of the enterprise itself."  Reves v. Ernst & Young, 507 U.S. 170, 172 (1993).  Defendants allege that Proven Methods Seminars L.L.C., Proven Methods Customer Service L.L.C., and Worldwide Media and Communications Group "facilitate the back office role by coordinating the marketing and media plans, managing and operating the toll-free telephone lines, designing and preparing the advertisements, facilitating communication via the internet and assuaging dissatisfied customers."  (Countercl. ¶ 23.)  Additionally, defendants allege that individual Michael Milin, "although not an officer or director of NGC, controls the enterprise in all aspects of its operations." (Id.)  Thus, defendants' counterclaims also contain sufficient allegations that the identified parties participated in the operation of the enterprise.

    B.    RICO Proximate Causation

10

In addition to the above elements, a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). Thus, to sufficiently allege a RICO claim, the RICO plaintiff must demonstrate not only that the opposing party's prohibited conduct was a cause in fact of his or her injury, but that it was the proximate cause as well. Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 266-67 (1992) (announcing that Congress, in its promulgation of § 1964(c), intended to import a proximate cause requirement into the RICO statutory scheme); see also Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991, 1998 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiffs injuries."); Brewer v. Salyer, No. 06-1324, 2007 WL 1454276, at *12 (E.D. Cal. May 17, 2007) ("[C]ourts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations.").

In the Ninth Circuit, courts focus on three non-exhaustive factors in considering proximate causation--i.e., whether the injury is "too remote" to allow recovery: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt

11

complicated rules apportioning damages to obviate the risk of multiple recoveries. Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1169 (9th Cir. 2002) (quoting Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc., 241 F.3d 696, 701 (9th Cir. 2001)).

Initially, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." Holmes, 503 U.S. at 268-69; cf. Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc., 271 F.3d 374, 385 (2d Cir. 2001) (finding RICO standing on behalf of third persons only where "[t]here is no class of potential plaintiffs who have been more directly injured by the alleged RICO conspiracy").

While conceding that prospective consumers are the primary targets of plaintiffs' alleged scheme, defendants also urge the court to interpret proximate causation liberally so to include their own purported victimization. Assuming that publication of plaintiffs' Table fraudulently coaxed consumers into purchasing plaintiffs' products and services, and thus in turn foreseeably deprived defendants from attaining these consumers' potential business, cause in fact may indeed be present. It is much more attenuated, however, to "take the next step and determine that there exists a direct relationship" between plaintiffs' scheme and defendants' failure to acquire the business of these consumers. Imagineering, Inc. V. Kiewit Pac. Co., 976 F.2d 1303, 1312 (9th Cir. 1992).

Although defendants appear to insist that these potential consumers would have purchased their products and services if the Table had not been published, their counterclaims

present no facts supporting this position. Significantly, as defendants themselves have declared throughout this litigation, the informative market pertaining to government grant availability is anything but lacking in competing corporate participants. (See Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. 1:8-9 ("Proven Methods is just one of many companies that offers customers information about obtaining loans, grants and subsidies from federal, state and local government agencies."), 3:19-20 ("Proven Methods appears to be only one of thousands of operators who provide these kinds of services.").)

There is simply no basis upon which to assume that prospective consumers, absent plaintiffs' alleged scheme, would have chosen defendants' products and services as opposed to one of the many alternatives.[4] Considered as a whole, defendants' RICO counterclaims allege only a non-compensable, speculative injury. See Associated Gen. Constr. v. Metro. Water Dist., 159 F.3d 1178, 1181 (9th Cir. 1998) (where an argument is entirely based on an "inference," rather than concrete factual allegation, such speculative allegations and unwarranted inferences are not sufficient to defeat a motion to dismiss); Imagineering, 976 F.2d at 1311. (a party's RICO claims will fail if they are based on "a speculative injury, which is not compensable under RICO"); Clegg

---

[4] Defendants' counterclaims do not allege a single instance of a consumer who declined to purchase defendants' products or services as a result of the viewing the Table. Cf. Hy Cite Corp. v. Badbusinessbureau, L.L.C., 418 F. Supp. 2d 1142 (D. Ariz. 2005) (plaintiff company sufficiently plead RICO injury only where users of defendants' website had expressly stated that they withheld business from plaintiff after viewing the allegedly false and defamatory statements about plaintiffs posted on the website).

13

v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

Defendants' only substantive citation in support of their RICO "competitive harm" argument, Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539 (5th Cir. 2001), is readily distinguishable from the facts alleged in this case.  In Proctor & Gamble, the Fifth Circuit "held open the possibility that a plaintiff company may not need to show reliance when a competitor lured the plaintiff's customers away by a fraud directed at the plaintiff's customers."  Id. at 565 (quoting Summit Props. Inc. v. Hoechst Celanese Corp., 214 F.3d 556, 561 (5th Cir. 2000)). Because the defendant in Proctor & Gamble had falsely represented that the plaintiff was affiliated with satanic worship in a direct effort to lure away plaintiff's customers, the Fifth Circuit found that "if [plaintiff's] customers relied on the fraudulent rumor in making decisions to boycott [plaintiff's] products, this reliance suffices to show proximate causation." Id.  While the Ninth Circuit has yet to adopt such an expansive reading of "proximate cause" in the context of civil RICO actions, it is notable that the Fifth Circuit only made this leap when presented with facts demonstrating an alleged scheme that directly targeted the plaintiff's reputation and already-secured customer base.

In contrast, the instant matter bears a stronger resemblance to Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006).  In Anza, a corporate plaintiff brought an action against

14

1 a business competitor for allegedly engaging in an unlawful
2 racketeering scheme aimed at gaining sales and market share.  Id.
3 at 1995.  Specifically, the plaintiff claimed that the
4 defendant's racketeering activity--mailing and electronically
5 sending false tax returns in an effort to fraudulently conceal
6 its practice of not charging its customers New York sales
7 taxes--allowed defendant to attract more customers and in turn
8 led to plaintiff's loss of "significant business and market
9 share."  Id.  The United States Supreme Court held that although
10 the plaintiff may have be able to construe some indirect but for
11 injury as a result of defendant's racketeering activity, the
12 proximate cause of plaintiff's alleged harms was a set of actions
13 distinct from the alleged RICO violation (defrauding the State of
14 New York).  Id. at 1997.

15          Similar to Anza, the sequence of events here
16 demonstrates that only the consumers' subsequent intervening
17 decision not to purchase defendants' products or services could
18 be construed as the "direct cause" of defendants' injuries, as
19 opposed to the alleged RICO violation (defrauding the consumers).
20 Consequently, while drawing all reasonable inferences in favor of
21 defendants may support the contention that "but for" the
22 publication of plaintiffs' advertisement the alleged injuries to
23 defendants would not have occurred--and perhaps that it was even
24 foreseeable that defendants would be injured--the direct
25 relationship between the injury and the plaintiffs' conduct is
26 nonetheless absent.  Id.; see also Imagineering, 976 F.2d at 1312
27 (dismissing RICO complaints because, although defendants'
28 purportedly illegal conduit scheme was a cause in fact of

15

plaintiff subcontractors' inability to secure construction contracts, it was nonetheless the intervening inability of the prime contractors to secure the primary contracts that was the direct cause of plaintiffs' injuries); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 929 (9th Cir. 1994) (because the harm from building owners' RICO scheme ran directly to the master tenant--which was responsible for the payment of the rent whether it collected any of the increase from the sublessees--plaintiff sublessee "is not directly injured by the alleged sham sales of the building" despite a resulting increase in his rent).

Additionally, the policy concerns underlying RICO's direct relationship requirement are present here.  "The less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors."  Anza, 126 S. Ct. at 1997 (quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 269 (1992)).  In Anza, the Supreme Court addressed this policy concern in detail:

> Further illustrating this point is the speculative nature of the proceedings that would follow if [defendants] were permitted to maintain [their] claim.  A court considering the claim would need to begin by calculating the portion of [defendants' injury] attributable to the alleged pattern of racketeering activity.  It next would have to calculate the portion of [defendants'] lost sales attributable to the relevant part of [injury].  The element of proximate causation recognized in Holmes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.  It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws.

Id. at 1997-98.

Due to the indirect nature of defendants' alleged injury, it would be exceedingly difficult for the court to ascertain what amount of their purported damages are attributable only to plaintiffs' conduct, apart from other factors such as defendants' own managerial decisions or the highly competitive nature of the market. See id. at 1997 (noting that RICO plaintiff's harms likely "resulted from factors other than petitioners' alleged acts of fraud . . . [as b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [RICO plaintiff's] lost sales were the product of defendant's decreased prices"); Pillsbury, 31 F.3d at 930 (refusing to find proximate causation where "the district court would be forced to determine whether and how much of the annual master lease rent increase . . . was due to reliance on the alleged phony resale of the building, and how much was due to other independent factors").

Further, because defendants are unable to allege that plaintiffs' scheme was directed at causing injury to their particular competitive standing, it would also be difficult to apportion damages without permitting multiple recoveries. In other words, allowing defendants to obtain treble damages from plaintiffs despite the absence of a proximately caused injury would presumably open the floodgates to any and all similarly situated government grant information companies. See id. ("Even assuming the amount of [RICO plaintiff's] injury is simple to ascertain, permitting [him or her] to sue needlessly exposes the defendants to a risk of multiple recoveries by [several parties including] other subtenants."). Therefore, the only proper RICO

17

plaintiffs would be the consumers that plaintiffs' allegedly targeted with publication of the altered Table.[5]

Accordingly, because defendants do not adequately allege that plaintiffs' RICO scheme proximately caused their injury, the court will grant plaintiffs' motion to dismiss defendants' first and second[6] counterclaims pursuant to Rule 12(b)(6).

IT IS THEREFORE ORDERED that plaintiffs' motion to dismiss defendants' first and second counterclaims premised on 18 U.S.C. § 1962(c) and (d) be, and the same hereby is, GRANTED.

DATED:  January 28, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5] The court is unaware of any consumers who have initiated or are planning to initiate action(s) against plaintiffs. Although the United States Supreme Court has pointed out that directly injured victims can generally be counted on to vindicate the law as private attorneys general, the directly injured party is not obligated to sue. Holmes, 503 U.S. at 267. Meanwhile, defendants--who, by discovering the alleged misrepresentations in plaintiffs' Table, may have legitimately uncovered a fraudulent practice--are not without alternative recourse. In fact, defendants additional counterclaims include allegations related to unlawful and unfair business practices, unfair competition, and false advertising. (Countercl. ¶¶ 54-61.)

[6] Because defendants' § 1962(d) conspiracy counterclaim is based on the same underlying conduct as their § 1962(c) counterclaim, the viability of the § 1962(d) claim rises and falls with the § 1962(c) claim. See Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1112, as amended by 352 F.3d 1187 (9th Cir. 2003) (because plaintiffs did not sufficiently state a claim for a violation of § 1962(c), their claim for conspiracy to violate that section necessarily fails); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (same).

18